Then you may proceed. Thank you, and may it please the court. My name is Greg Laurie. I am here on behalf of the Pollinator Stewardship Council and the American Beekeeping Federation, organizations that represent the commercial beekeeping industry in the United States. Commercial beekeepers make possible about $20 billion in U.S. agricultural production each year, and they are at the front lines of the pollination crisis underlying this case. I would like to spend my time addressing the three serious violations of FFRA that we briefed. Those are, first, the lack of public process, second, the failure to properly assess the risk to bees, and third, the one-sided balancing of sulfoxiflorous risk and benefits, and I will try to reserve about two minutes of my time for rebuttal. Okay, and if I could ask you to pause for a moment. The clock is not running. Okay, go ahead. Thank you. So turning first to this issue of notice and comment. It's undisputed that EPA did not give notice or invite comment after Pollinator 1, when Corteva then Dow provided EPA with additional Tier 2 studies and asked EPA to register sulfoxiflor for use on bee attractive crops before and during bloom. These are things like strawberries, cucurbits, citrus. EPA's litigation position here is that these were not technically new uses requiring notice because they were within the scope of Corteva's original 2010 application and EPA's original 2013 registration decision, but that argument fails for two reasons. First, this court, of course, vacated EPA's original registration decision in the Pollinator 1 case, and EPA's 2019 registration decision, the decision at issue now, admits that these vacated uses were, in fact, new uses in 2019 because they were not registered at that point in time. If you look at page 23 of the 2019 registration decision, this is in the record at 1 PSER 23, EPA says, quote, EPA is unconditionally granting new uses for sulfoxiflor. It goes on, the new uses that had previously been granted and vacated are citrus, cotton, cucurbits, soybeans, and strawberries. It goes on. The second problem with EPA's argument is, of course, that Corteva narrowed the scope of its original application after vacature. Page two of the 2019 registration decision, again, admits this. It says, quote, following the vacature, Dow AgroSciences amended the remanded sulfoxiflor application, end quote. That amended application only asked EPA to register some of the lower risk uses that did not trigger the need for additional tier two studies. So, but the notion that somehow that original application remained pending at that point doesn't hold up. In fact, EPA made clear in 2016 that Corteva would need to submit a new application based on new data in order for EPA to re-register sulfoxiflor for those highest risk, most controversial uses, those B-attractive crops before and during bloom. I would point the court to the record at 4 PSER 706, where EPA said, quote, Dow AgroSciences is welcome to apply for additional uses when they have additional studies ready to submit, end quote. The problem, of course, is that EPA did not notify the public in 2018 when Corteva did eventually provide EPA with those additional tier two studies and asked EPA to register sulfoxiflor for use on B-attractive crops before and during bloom. And this by itself is a fundamental violation. Counselor, can I just ask, on that point, has EPA conceded that you're correct on that point? EPA agrees that, in fact, they did not give an opportunity for further public notice. And that decision, frankly, that 2019 decision came as a complete surprise to the beekeeping industry. It was not, we did not learn of that until the day that it was, it was fait accompli. And I would just end by... So both parties agree then that the EPA violated the statute by failing to consult with the appropriate wildlife agencies? Sorry, your honor, this issue is not an ESA issue. This is a FIFRA issue. Section 3C4 of FIFRA requires EPA to give notice when they receive an application to register a new use. And so, again, here the issue is no one disputes that they did not give the notice after pollinator one. The issue is whether the notice that they gave back in 2010 satisfied that obligation. And we contended it did not. If I could ask, maybe sort of jumping ahead and anticipating the remedial question, but if they had given notice and said, you know, we have to treat this as a new application, so here's a notice and a new opportunity to comment. What would you have submitted at that point that you haven't had an opportunity to present? Certainly. Well, first, what would beekeepers have submitted? What would the commercial beekeeping industry have submitted? Most importantly, perhaps, commercial beekeepers would have been able to provide EPA with information about the agricultural cost associated with increasing the risk to bees during a pollination crisis in which we're currently losing more than 40% of colonies each year. This is information that EPA didn't gather, didn't have, and as a result was not able to balance the cost and benefit of its decision. But had EPA given our clients an opportunity, they would have certainly availed themselves of that to give the EPA that position, that information. I would also point out that the 10 amici states that have supported vacature in this case, they all, at page six to seven of their brief, they all made clear that EPA's failure to provide for public notice and comment significantly undermined and frustrated their efforts to pollinate. So I'll end by just saying that the Standing Rock tribe case in the DC circuit makes clear that this failure to provide for notice and comment is by itself a serious violation that requires vacature of the underlying decision. But I'd turn then next to the issue of the new tier two studies and why they do not resolve the data gaps identified by the court in pollinator one and cannot support EPA's decision to waive the requirement for tier three studies. And I want to be clear about this because pollinator one case got so in the weeds on this, I think it is important that the court understand exactly what went on. So Corteva provided EPA with five new tier two studies in 2018. Three of them were tunnel studies where the colony is placed in an enclosure for up to 10 days and sprayed with various levels sulfoxaflora. And the second were two colony feeding studies where the hives are not enclosed, but they're fed a sugar solution that is dosed with different levels of sulfoxaflora. Before you go into the details of the new tier two studies, if we agree with you that the agency should have conducted a new notice and comment to address these new tier two studies, do we have to address the merits of those now? Or is it something that let the agency respond to in a new notice and comment? The violation, the public notice and comment violation is by itself enough to warrant vacatur. I do think that it would be, the agency would be, it would be helpful for the agency to understand the extent of its different violations. But no, the notice and comment violation is by itself enough to warrant vacatur of the underlying decision. Okay, so turning back to these tier two studies, unless the court has further questions. Okay, so again, the idea here is the tier two studies assess the risk of the pesticide to the entire colony, but the super organism rather than just the tier one studies, which are simply measure the effect on the individual adult foraging bee. And let's begin with the three new tunnel studies, which are summarized on pages 72 to 73 of EPA's ecological risk assessment. One of the new tunnel studies, what they call the Germany study, only expose colonies to 32% of the maximum application rate for sulfoxiflor. They only gave it a one third dose. So just like in pollinator one, EPA correctly concluded that that study couldn't really shed any light on, on any more so than the studies in pollinator one. The other two studies, what they call the North Carolina and Kansas tunnel studies did expose colonies to the maximum application rate. And EPA found the majority of those colonies didn't make it through the winter. EPA dismissed these alarming results as inconclusive because many of the control colonies also failed, but that left EPA without sufficient data to address sulfoxiflor impact. And I see I'm running into my, my rebuttal time. I do want to try to get through this, but I, but I don't want, but I want to leave myself a little bit of time. And I will, so I will try to go quickly. The colony feeding studies, they are summarized on pages 78 to 80. They're called the Germany and U.S. studies. And what they do is by combining the data from these colony feeding studies with the data from the Corteva's residue studies for pollen and nectar residue, they crunched the numbers and they found that sulfoxiflor use on most of the bee attractive crops will result in adverse colony level effects. Again, using Corteva's own data, EPA found that sulfoxiflor use on many crops will result in colony level risk. Now, no one disputes that the results of these tier two studies, these near two studies triggered the regulatory requirement for tier three full field studies, but EPA waived that requirement on the grounds that it would not be useful. Well, in fact, as we've briefed, EPA's regulations and policies both call for tier three studies in precisely these circumstances where the tier two tests show a potential for colony level risk and the, and they're also unable to address the long-term overwintering effects on colony health. So again, we're back where we were in pollinator one and EPA still lacks the data necessary to truly assess the effect of sulfoxiflor on colonies. And with that, I will turn it over unless the court has questions. And you've used up all your time, but we'll give you a minute for rebuttal. Thank you. Mr. Kimbrell. Good afternoon and may it please the court, George Kimbrell on behalf of the Consolidated Center for Food Safety petitioners. I'd like to also reserve two minutes for rebuttal and focus on three main points. I'd actually like to start with two remedy points and then one make sure I get to the remedy point. So I'm going to start there and really start with the environmental consequences of vocator. The, the question has been posed whether sulfoxiflor will replace existing pesticides and what the overall environmental result of that will be. And what I'd like to underscore for the court to start is that that premise is a false one and is wrong intended to be combined with them, added to them. So it can be done several different ways. The most common way is what's done in a multi pesticide tank mix. So that's when you have a lot of pesticides and you're spraying them all together in a tank mix. Another way is as a rotational partner, adding it to rotations. And then finally, even in existing products, where it's combined with another pesticide and using that product. So this is very important that it's going to be additive and combined with these other pesticides, not replace any of them. And the clearest evidence in the record of this is in the further excerpts of record six with the U.S. Department of Agriculture's letter to EPA saying when EPA had posited whether they would prohibit tank mixing, that is mixing sufoxiflor with other pesticides and USDA told them that that would be quote a de facto ban on its ability to be used by farmers and make it and through the next 10, 20 pages when they kind of go through the crops and over and over again, EPA describes sufoxiflor as an additional pesticide that's comparable and is a tool for farmers, but is not a necessity and not going to replace existing pesticides. Is there anything in the record about whether maybe they may use less of those other pesticides because they're using this new one? Not that I know of. Is there anything one way or the other that the record shows? Not that I know of Judge Lee. I think that the take home though is just that if it's being added to rotations, if it's being added to tank mixes, there's no way that it's going to decrease harm to the environment and in particular bees which have been central to this case and instead it's going to increase risk to them and just as in pollinator one, that means that the environmentally protective remedy is vacating the registration. I would add briefly that even if you adopt kind of the replacement argument that has been put forth, as we briefed, there are a number of at least a dozen reduced risk EPA classified alternatives to sufoxiflor that farmers use that are readily available and are widely used by farmers and one of the reasons EPA's cost benefit analysis is not supported by substantial evidence is EPA simply left out those reduced risk alternatives from its calculus so EPA really can't know what the impacts are to bees and other species without including what that universe is even under their own replacement theory. The second major point I wanted to make is on the second half of the vocator calculus that is the seriousness of the consequences which has to be weighed against whatever the the disruptive consequences are the seriousness of the violations rather and here I wanted to underscore that there are two different procedural violations the one that my colleague just briefed the fifth run notice and comment violation and the one noted by Judge O'Scanlan that has been acknowledged which is the endangered species act failure to consult consultation argument so there you have not one but two fundamental flaws that the courts have said repeatedly warrant vocator and again to your point Judge Miller I think what we would have submitted during a consultation process as well as during notice and comment is very important not just our clients but the states as well and as their amicus brief details were prohibited from providing comment during that so when you have a procedural violation like that the remedy should focus on protecting the integrity of it and that's what vocator would do but remand without vocator would vitiate the integrity of that process and allow the product to continue without it. The section 7 violation in particular I would just say this court has referred to section 7 of the endangered species act repeatedly as the heart of that statute so a violation to it cuts to the core of that statutory scheme and EPA as we noted in our 28j letter response yesterday now acknowledges that its failure to consult on pesticides like sufoxiflor have quote resulted in insufficient protections to endangered species so this is not just a one-off but a pattern by this agency again this is another thing that the states the 10 state amicus brief supporting vocator details quite extensively these past violations of the endangered species act and although EPA now says it can finish the biological evaluation by spring of this year which is different than it took told the motions panel previously that it could finish by 2025 that's just the first step of this process and consultation and the protections for endangered species that will follow from it are many years off which is why vocator is still very important to protect those species given the acknowledged risks to them by EPA on this record so then the last point I wanted to do make was one merits argument that's a evidence gap argument so we if agencies have these substantial data gap gaps then their then their decision is not supported by substantial evidence and we briefed a number of these as my colleague mentioned the the lack of any analysis of harm to be pollinated agriculture 20 billion dollars a year we we briefed one about non-honey bees so what they're very different these traditional bees native bees and EPA didn't look at that but the one I wanted to focus was was the hazard analysis and I wanted to draw the court's attention specifically to the fact that EPA has no data for the comparators that it shows when it comes to bee toxicity and the critical page for this in the record is er 341 if you look at 341 which is one table it's the sum total of the agency's hazard comparison between suboxone floor and EPA's hand-picked alternatives to it all EPA has there and you look at bee gaps there's no data for four of the six alternatives when it comes to for example acute toxicity or five of the six for example when it comes to chronic toxicity so with regards to this EPA admits at er 21 that it it cannot make a comparison a comparison quote cannot be made at er 21 it says that it cannot make a comparison for the toxicity of these other comparators to bees from suboxone floor and which one is more or less toxic but so if I can ask I mean they I'm they said that um but then they went on to you know there's a couple paragraphs of looking at uh you know comparative toxicity with the data that they did have and and uh I guess the how how long it's uh retained uh in the plant and I guess my question is I mean we're we're not entomological experts um why when the EPA has sort of made a judgment based on the data that it has available to it why isn't that the sort of you know scientific or technical judgment that that we ought to defer to yes judge miller and I see I'm eating into my rebuttal time but I want to answer your question um and so I would say two things first I would say anytime there's a much less deference which makes sense they didn't follow you know the the rules that's the sierra legacy case that we cite in our briefing but more than that we're not asking you to second guess guess the agency at all just like judge smith and pollinator one all we're saying is look at the data make sure they did their homework here and if they don't they can't connect the dots between their conclusion and the facts found where if there's no supporting data for that conclusion then that must mean that the decision is not supported by substantial evidence unless there are further questions I'll reserve the rest of my time all right thank you um miss greenfield good afternoon may it please the court my name is Megan Greenfield and I'm here on behalf of EPA I'm sharing my time this morning with Amanda Berman who's here on behalf of the registrant Corteva I'd like to first address petitioner's argument that if if the panel grants remand without they could are here that they will be deprived of their of judicial review on their FIFRA claims that's not true EPA is on track to meet the deadline that it committed to in the second declaration that is completing its effects determination and providing additional FIFRA rationale on the effects on beekeepers by the spring of during the spring of this year after that the agency intends to take a new FIFRA action that reflects these analyses and will itself be judicially reviewable and what's what's the timeline for completing that so the estimated timeline for completing that is is likely within a few months of the completion of the effects determination and providing of the additional rationale that takes a little bit of because oftentimes and it's hard to speak to exactly what that process will entail because it's unclear what the final determinations will be at this time but in the past they've involved like for example negotiations with a registrant over things like mitigation measures and the like that can be then put in place on the registration if that's appropriate and I think that's important to keep in mind here because it's a you know there's a substantial likelihood that EPA can at the conclusion of this process support the uses that are registered in the 2019 registrations but I think it's also important that it's possible that these additional analyses and perhaps additional mitigation measures may impact the the claims that petitioners are bringing here and so I'm sorry I don't know that I've heard a response to Judge Miller's question you say a few months after these other effects so are we talking about a year two years three years how long are we really talking about here no I don't think we're talking in years time I think we're talking in a handful of months time so so we said by the spring end of the spring of this year we're going to take make the effects determination do the analysis after that I think it's a handful of months to do a new for action but I'll be clear EPA has no objection to this panel retaining jurisdiction during the remand period to avoid any doubt that petitioners can later have their day in court but the to be clear that the remand that you're talking about here is is not one that would provide for a new round of notice and comment because you you have not I mean you conceded the ESA error and the explanation of the cost benefit analysis but you haven't conceded that there needed to be a new round of comment is that right that's right we don't concede that additional notice and comment is required under FFRA these are adjudications not informal rule makings and so the APA's full notice and comment requirements don't apply the only obligation to take notice and receive comment arises out of FFRA itself and that's 7 USC 136 AC4 and that says that's entitled notice of application and it says the agency must provide notice of application once it receives a statement and that full term is defined in C1 and supporting data and that term what supporting data is is defined in C2 and so it's only once EPA receives those two things that it puts it out for notice it doesn't provide the data at that point in these C4 notices historically it just hasn't it hasn't done that you know at times the agency has solicited comment more broadly under a transparency policy but that's a voluntary thing what the statute requires is much narrower and it just really applies to the fact that the application exists and suppose we disagreed and we think and we were to conclude that you know in the wake of the prior pollinator decision having vacated the registration that 136A did require a new notice how would that affect the timing of the remand that you're talking about so if if you concluded that additional notice was required of an application you know those that you know I'd have to go back to the agency in a specific time frame but generally those aren't lengthy comment periods because it is it's intended to be you know more of like a ministerial or cursory process that the C4 notice of application and you're right that the pollinator stewardship council case did vacate the registration but it's it didn't vacate the application to at the petition for review just sought review of the registration not of the application itself and and the court also just spoke to the registration there not the if I may interrupt the problem here is you know the ninth circuit pollinator one said you didn't have enough studies submit those studies and now you know CORTIVA submits these studies to the EPA but the public has never had an opportunity to comment on them and I mean one of the bargains here we give deference to the agencies on these technical issues but to keep the government honest you have to at least solicit some comment from the public that may maybe prove the government is mistaken maybe there's some flaws in the analysis and frankly even for our judicial review I mean we can't understand uh we're very limited judicial review but we can't even do that without public comment on these studies uh I mean we're not scientists I mean no one well maybe judge Miller I think he has a degree in chemistry from Harvard so he may understand this stuff but the rest of us won't so we we really do need the public comment to better understand this so I accept these studies never providing public comment then rely on them to justify the new registration I just you know I think it just seems like this is basic you know how you brought an administrator say it is that's the bargain that they've established and I completely agree and that in the informal rulemaking context if this were a regulation that the data that the agency relied on and reaching that conclusion for that regulation would have to be subject to public comment but this is a different process it's an adjudication and because it's an adjudication those informal rulemaking requirements simply just don't apply and the only requirements come out of FIFRA itself and that's c4 and and that that provision of the statute doesn't require the supporting data to itself be put up for comment there's a regulation here that interprets that provision that's 40 CFR 152-102 and that directs the agency to provide notice of the application and stop doesn't speak to the data and um and is that implicit that if you have a new application you got to have supporting data I mean if if you don't I mean then what's to stop the government from issuing a a rule and it's based on complete bogus science or completely mistaken it's got to be they got to be at least subject to some scrutiny or comment I mean I just can't I find it's hard to believe that you can submit an application but you know you can provide common application but the actual material that justifies the proposed new proposed use in the application that you can't you know it's a black box I understand the concern that there wouldn't be comment on all of the underlying supporting data I hear what you're saying there what what I'm saying is that the agency's practice has under c4 which is the only statutory requirement here has never been to publish that data for comment under that provision and that the data really is tested then in the form of judicial review like here we have a protective order that the that the court entered and only after the protective order was entered was that full record disclosed so so it is just probably what dealing with judicial review is then it's litigation and parties positions get locked in people dig in there's not whereas you know through the agency process there's a lot of give and take you can modify whereas litigation everybody just digs in and they justify it no matter what so let me ask you a later question if the EPA had to under the FIFRA provide notice and comment on these new 2018 tier 2 studies how long would that take I haven't asked the agency that specific question but generally the process involves publishing a notice in the federal register which takes a little bit of time with OFR so you know that that can take about 30-45 days to put those up for public comment the typical comment period is about 30 days so if this court asked the agency under C4 to put the studies up for public comment you know that is also probably we're looking at a handful of months I would note that and Corteva can speak to this more directly I do think that there are confidentiality issues with many of the studies and so I don't have a full analysis of that ready for you but it's quite possible that certain of them would not be able to be put up for public comment because they contain confidential business information as scientific studies prepared in support of this application. Now so if we were to agree across the board with the petitioner's request that this be returned with vacatur how long would it take? If you vacated the registration then how long would that new process take? I think it would require probably you know I can't speak to that directly I think that it would then require EPA to work with the registrant and figure out you know what the basis of the vacatur was is it the ESA violation or is it simply a procedural issue but I would say here that you know the equities are overwhelming that soapoxy is better for species across the board that's enamels, freshwater species and pollinators. It's also better for human health it poses no risks of human concern to human health which is one of the things that makes it really unique. It's also to one of the points earlier it's used as a rotational partner so it does reduce the application of other more toxic pesticides. This is at page PSCER 12 and 16. It's applied less frequently and reduces 4, 6, 10 or 12 rounds of application from other pesticides. So that's I guess the concern I have with that is you know if the agency had said all the things you just said about you know here are the reasons why this is you know beneficial for the environment and human health and so forth you know therefore we're not going to do an ESA analysis because we it would take too long and we this is a great product and we might want to approve it faster. You know there's be no dispute that we'd have to set that aside because you don't get to do that and it seems a little bit odd that you can instead you know skip the ESA analysis which is statutorily required and then come to us and say well you know in the normal course you would vacate our decision because it didn't comply with the statute but here because of all these factors we want you not to vacate it. So it seems like that the approach that you're proposing creates bad I'm not you know questioning the agency's conduct in this case but if adopted as a general practice would create bad incentives for agencies going forward. So can you address that? We recognize the error here and we did early on in this litigation. I think the vacator analysis is tied to the unique facts and circumstances of each case and this is a very unique pesticide and vacating it would cause and supported by the record harm to human health and the environment and particularly where the in a matter of months we think that the equities weigh strongly in favor of leaving the registration in place during that time period. I know the petitioners say there's no evidence at all that EPA considered impacts to honeybees and hives but that's you know simply not true. EPA considered the very data that that honeybee that that they said was most important for honeybees and that's RT25 data which is a measure of residual toxicity and here for sulfoxiflora it's less than three hours and the the most common broad spectrum insecticides that farmers would use as substitutes have much much longer periods of residual toxicity. So here leaving the registration in place would protect the very species that the Endangered Species Act is is also aimed at protecting and so you know I we recognize the error we recognize that's a difficulty with this case but on the equities here this is just a very unique product and and and so we they weigh strongly in favor of leaving it in place. All right counsel I recognize your argument on sulfoxiflora as being in and of itself a useful product but counsel on the other side tells us that this would be mixed other pesticides. What's your response? I believe it was Mr. Lori who made that point. Right so it is true that it's approved for tank mixes but but the fact that it's used as a rotational partner and I think that's what they're drawing from they're saying well that means it's just added to what the the farmers would otherwise use and that's not actually how it works. To avoid pest resistance to insecticides farmers often rotate the use so they'll use different pesticides over the course of a season to make sure that whatever pest it is doesn't grow resilient to that. So sulfoxiflora really is taking the place of others more harmful pesticides that would be used instead and that's clear for the record at PSCER 12 and 16 EPA there discusses this idea of what a rotational partner is and say that sulfoxiflora will in fact be substituted and that's also consistent with the USDA's declarations on the topic which says in the absence of sulfoxiflora farmers are going to use other more harmful pesticides and they're going to have to use a lot more of them because sulfoxiflora is applied at a much lower rate and less frequently than those broad spectrum insecticides that are often used as substitutes. All right did you have any further questions? Looks like not so thank you Ms. Greenfield. Ms. Berman. Thank you your honor Amanda Berman on behalf of Intervenor Corteva. I'd like to start with EPA's FIFRA analysis. Petitioners are in fact asking this court to essentially ignore the key findings of that analysis. As part of the analysis EPA closely considered sulfoxiflora's effects on a wide range of species including bees and it found three key things. First that sulfoxiflora is less toxic than most of the alternatives. Second that it's applied at much lower usage rates and third that it's less persistent and that's that RT25 value that DOJ council referenced and which beekeepers in fact the PSCER record. But EPA didn't stop there it didn't just amass the data and put it in a chart. It explained in its registration decision that sulfoxiflora is better than these alternatives that it would replace because it is selected. It does not harm beneficial insects for example lady bugs which in turn kill the pests that sulfoxiflora and these other insecticides target. So that means that farmers can reduce their overall use of pesticide as a result and EPA discussed that at page 16 of the registration decision which is also page 16 of the first PSCER volume. And these are the exact type of scientific determinations on which deference is due under this court's precedent and they're more than enough to uphold EPA's decision under FIFRA's substantial evidence standard. And I would also like to again address the point that DOJ council was making a minute ago that EPA did in fact find and explain that sulfoxiflora doesn't just get added into the rotation it replaces 2, 4, 6, 8, 10 applications of the broad spectrum insecticides it would replace. EPA discussed that at pages 11 to 12 and 32 of the registration decision and I'd also point the court to page 700 of the record which is EPA's response to comments among other things EPA says there growers will use sulfoxiflora instead of neonicotinoids because it actually works on pests that neonicotinoids fail to control. So the heart of EPA's analysis was in fact that sulfoxiflora would replace these broad spectrum insecticides that are not selected that kill other beneficial insects and reduce overall pesticide usage. Now petitioners nonetheless asked this court to again vacate the registration for the crops on which sulfoxiflora is most needed cotton, soybeans, citrus. The court should not do that. We all acknowledge that EPA did not make the effects determination that is required under the Endangered Species Act but vacature is not the right answer in this case because first it is very disruptive to farmers and second the risk of environmental harm as farmers revert to more toxic and more persistent alternatives is high. Starting with that first point EPA predicted on page 12 of its decision document and our expert Dr. Mitchell has also provided data and analysis supporting that sulfoxiflora is in fact replacing older less effective products for key crops like National Cotton Council explained that removing sulfoxiflora from farmers pest control arsenal could lead to very significant crop losses and major economic damage to farmers. And I can ask you about that I don't know whether it matters the allied signal analysis but I'm wondering is your claim that there's been reliance on the EPA's approval of this such that you know if we were to vacate it you know people will have will be harmed by the fact that it was approved and then vacated or is the claim simply that you know the this product is useful and having it approved is good and if we vacate it it will no longer be approved and that will be bad trying to distinguish the there's sort of two kinds of harm that you can imagine I'm wondering which you think is yes your honor our argument here is that vacature would cause disruption including to farmers from for example the time and money they have to spend to figure out how to replace sulfoxiflora in their pest management rotation and in the Enlist Duo decision National Family Farmers Coalition that's the 2020 case addressing the pesticide known as Enlist Duo this court found that alone to be a compelling reason not to vacate even after finding that EPA hadn't examined the effects on monarch butterflies and as in the Enlist Duo case farmers here face the disruptive consequences of an interim change that may itself again be changed and again and may may may in fact be changed again very soon after EPA completes its effects determination this spring and that ping-pong and registration status your honors I will note would also harm Corteva standing with farmers as a purveyor of products that they can depend on but your honors perhaps the most important thing indeed the most important thing is that remanding without vacature is this is one of the unique cases where it would be better for the environment and species to remand without vacature EPA found that sulfoxiflora is better for bees and I'm quoting EPA there page 21 of the decision document and it also found that sulfoxiflora is better for species of all types and that's at pages 19 to 20 of its decision document I want to point the language EPA uses because it's it's really noteworthy there it says it's very unusual for an insecticide to pose no acute or chronic risk to aquatic invertebrates sulfoxiflora is truly unique sulfoxiflora has a better toxicity profile for birds across nearly all endpoints and for mammals sulfoxiflora is far less toxic than the alternatives this is a very fulsome analysis of sulfoxiflora's impacts on species and in the center for biological diversity case in 2017 the D.C. circuit pointed to exactly that type of FIFRA analysis as a reason to decline to vacate even where we had the same ESA violation the court recognized that EPA had not ignored species quite the contrary it considered the effects on species as part of the FIFRA analysis I can ask a procedural question for the 2019 registration my understanding is that CORTIVA didn't submit a formal new application for the uses that were approved in the 2019 registration was there other type of document that was submitted to the EPA and is there something in the record that shows some kind of communication from CORTIVA to EPA your honor I'm not aware of anything like that our understanding of how the the FIFRA notice process works is the same as EPA's EPA has to provide a notice of the application EPA did that in 2010 when certain of these uses were first noticed through an application and it did that in 2014 in regard to the remaining uses now CORTIVA submitted new data 18 new tier 2 studies in fact not just five as council for petitioners suggested in 2018 but as DOJ council has noted there is no requirement in either this the statute or in EPA's regulations for EPA to provide that data to the public and indeed your honors most of that data is confidential business information that cannot be made generally publicly available so we we concur with EPA there that no new application was required the application remained pending even if the uses were vacated were there other additional documents that were submitted to the EPA between 2018 when the when the studies were submitted and 2019 when the registration new registration was approved your honor I believe there may have been a benefits analysis that CORTIVA submitted I am not sure offhand if that was after the studies I think it was and there was certainly a lot of back and forth between the agency and CORTIVA in both emails I believe there were meetings this is this registration is a process there's a lot of back and forth usually between the agency and the registrant to gather the data the agency needs but there is no requirement in the regulations or the statute that each round of new data then has to be put out for public comment and your honor I see that I'm over time sorry your honor council I just want to be sure I understand your response to Judge Lee's question because I have a similar concern did didn't Dow at that time exclude the in the application of sulfoxafor to indeterminate blooming crops your honor in after this court's decision and pollinator one in 2015 Dow asked EPA to approve in regard to a more limited limited set of uses but and how was that done how was that done in a letter or an application modification of some sort your honor I frankly don't know the answer to that question offhand I apologize I did want to just briefly address this this idea raised by petitioners council that EPA is lacking data on certain points of toxicity for example certain of the in that chart at page 341 there are certain blanks but your honors you know that's that's no reason to to vacate the the registration decision here that would be a really perverse way to apply we think the statutory no unreasonable adverse effects requirements as it would prevent EPA from registering newer better less toxic alternatives because it's lacking data on some the older pesticides that are out there being commonly used EPA concluded that it had enough data and as the court can see from that chart it had data on a lot of different endpoints and it's for the agency as this court explained in the national family farm coalition decision to decide when it has enough data and when the limitation and and how the limitations can be overcome and EPA did that very reasonably here this is a very robust record 18 tiers two studies is very unusual your honors so we would we would respectfully ask the court to remand the 2019 registration amendments without vacating vacating them so that farmers can continue to use this more environmentally beneficial and this more effective pesticide on their crops thank you thank you let's put two minutes on the clock Mr. Lurie thank you Judge Miller and I have just three points I would like to make I begin with this question of was there another application was there a formal application after pollinator one to re-add the the indeterminate blooming crops there was not there was not a document stamped application if you look in the record though and I don't have the sites in front of me at the moment you will see a lot of communication back and forth email communication from Corteva to EPA saying hey let's talk about we have that we're getting the studies ready let's talk about putting these things back on the label so it's an informal process but I don't think that should be used to circumvent the requirement that when there is an ask when there is a request that that triggers the the notice that there has been this request to bring it back and I would point one other thing with this most common issue is in the past both in 2013 and in 2016 EPA has always made not only noticed the receipt of the application but has also given notice of the proposed registration decision and the draft ecological risk assessment which synthesizes all the science that they're proposed to rely on this was the first time that EPA decided to register the most controversial uses without any public involvement whatsoever let me move them to this question sorry can you address that a little bit further I think you know the government's at least in the briefs their position is they did the prior notice and comment wasn't required by any statute it was just under their transparency policy so I mean does the government have a point that you know they the EPA has a lot of power here and it doesn't have to uh you know make these studies available and they can make the decision and you know ultimately your remedy may be you know what we're doing here right now your honor under section 3c for FIFRA they had an obligation to give notice after the request to bring those crops back was made and that based on the new data so that that request that was their duty under FIFRA I'll does that answer the question sort of okay I really want to make two more points if I can one goes to this issue of the sulfoxiflora being better than bees our entire argument here is that EPA doesn't have the data to know exactly how bad sulfoxiflora is for colonies and therefore exactly how bad it is for all of us to eat the food that require colonies they point to the contact toxicity and they point to the r2 the rt25 residue but that's all about contact that's all about how the adult bees that come into contact with the spray that doesn't deal with this question of what about when it gets into the pollen and the nectar and it's brought back to the hive and fed to the developing brood and causes the whole colony to go down the tubes that's what EPA needs to look at and that's what they don't have and then finally I thought I thought they did address that I mean on page 22 at least they do say that the persistence of sulfoxiflora and pollen and nectar is very short and so they don't think it'll accumulate why is that inadequate it won't it won't accumulate but when they use those pollen and nectar residue studies and they combine them with the colony feeding studies they see that even after just 10 days the colony is going to eat more sulfoxiflora than EPA says will cause an adverse colony level effect that's why they reach that potential for colony level risk finding and that's why they were that's why they triggered the requirement for tier three studies which they ended up waiving last point I would like to make unless the court has questions is that with respect to that governed the orderly distribution and use of existing stocks of the chemical while the remand was happening and there's one other fact that is overlooked completely by the by the respondents here which is that the 10 states that collectively produce about 90 percent of the nuts tree fruits berries vegetables and other bee attractive crops that are really at issue in this case that's primarily California and the western states have all joined in the request for that and they don't seem to think that this is such a big deal and I think that is it is a fact that it has a lot of bearing on this case and I am over time I will yield unless the court has anything further thank you all right we'll hear from Mr. Kimbrell so thank you Judge Miller just three points if I might uh in closing briefly first I think back to the point of additive versus replacement I think even if you are into a rotation with other pesticides it means those other pesticides are still in rotation maybe there's less rotations of them but they're not coming out of rotation I would also point the court to a specific product that we noted in Dr. Donnelly's second declaration which is a great you know example illustration of this additional use with suffoxiflor which is this new product Ridgeback which combines bifenthrin and suffoxiflor into one product so bifenthrin is one of the pesticides that EPA claims is going to be replaced by suffoxiflor but I think the big mystery here is if this is such a great safe pesticide why isn't it a reduced risk classified pesticide and I haven't heard any excuse for that from the agency there are 12 other ones that EPA has classified as reduced risk that are alternatives to suffoxiflor so even under their own replacement theory it's unclear when those are going to be replaced by suffoxiflor versus the six ones that they hand-picked and here I would point the court to Dr. Donnelly's second declaration which is looking at record evidence the further excerpts of records page 30 to 45 and Dow's 2017 study and it breaks down crop by crop and shows that in the majority of crops for example that are the highest risk to bees the reduced risk alternatives are more acres than those that EPA hand-picked that's table two of that declaration looking at that record evidence so and then finally I would say with regards to cases that have been mentioned the Enlist Duo case is a case where there was one technical FIFRA violation it didn't have a holding on the impacts as far as the consequences and it said because the EPA had fully complied with the Endangered Species Act and fully complied with FIFRA then it wasn't a serious error for purposes of vocator that's very different than here the other National Family Farm Coalition case is much closer to here that's the acknowledged dramatic impacts likely to farmers but said the most protective alternative was to result remedy rather was to remove the pesticide from the market and issue vocator which is what it did I would say in closing then your honor that there was one substantial data gap in pollinator one that the court said was sufficient to vacate here we have multiple substantial data gaps plus two different procedural violations to go the core of both statutes and an ESA duty which the courts have said are should be of the highest priority of agencies so based on these specific facts here the respondents have not shown that this is a rare case in which equity demands that remand without vocator is warranted the agency should not be rewarded with a free pass for its violations rather just as in pollinator one this court should grant petitions and vacate the registration thank you counsel we thank all four counsel for their very helpful arguments today and the case is submitted and that concludes our calendar for the day this court for this session stands adjourned
judges: O'SCANNLAIN, MILLER, LEE